[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15042
_____

D.C. Docket No. 2:09-cv-01640-SLB

RYAN D. BURCH,

Plaintiff - Appellant,

versus

P.J. CHEESE, INC.,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 7, 2017)

Before TJOFLAT, JILL PRYOR, Circuit Judges, and MOODY,[*] District Judge.

TJOFLAT, Circuit Judge:

"This is another arbitration dispute in which the parties are litigating whether or not they should be litigating." *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1026 (11th Cir. 2003). In this case, an employee sued his former employer for alleged discrimination in violation of several federal statutes. In response, the employer moved the District Court to submit the dispute to arbitration in accordance with an employment contract purportedly signed by the employee. The employee opposed the motion, denying that he signed the agreement. To resolve the factual dispute, the District Court held a bench trial and concluded that the signature was valid. Based on this finding, the Court granted the employer's motion to compel arbitration, and dismissed the employee's claims without prejudice.

The principal issue on appeal is whether the District Court erred in concluding that a general jury demand in the employee's complaint failed to preserve his statutory right to a jury trial under Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), on the disputed questions of fact related to the

---

[*] The Honorable James S. Moody, Jr., United States District Judge for the Middle District of Florida, sitting by designation.

authenticity of his signature on the purported arbitration agreement.  Because we hold that that the specific procedures provided in Section 4 of the FAA for demanding a jury trial on arbitrability issues displace the general procedures for demanding a jury trial under the Federal Rules of Civil Procedure, we find no error and affirm the District Court's order.

I.

Ryan D. Burch ("Burch") began working for P.J. Cheese, Inc. ("P.J. Cheese")—a franchisee of Papa Johns located in Alabama—in 1999.  In September, 2004, Burch was promoted to general manager of P.J. Cheese's Fairfield, Alabama location. He worked there until October 14, 2007, when he was asked to turn in his keys.

Roughly two years after the firing, on August 14, 2009, Burch brought this action against P.J. Cheese in the United States District Court for the Northern District of Alabama, seeking relief under an assortment of federal employment statutes.  Specifically, Burch alleged that he was paid less than his female co-workers in violation of the Equal Pay Act of 1963,  29 U.S.C. § 206(d)(1) ("Equal Pay Act"), that he was discriminated against on account of his race in violation of Title VII of the Civil Rights Act of 1964,  42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"), and that he was terminated in retaliation

3

for filing an Equal Employment Opportunity Commission ("EEOC") Charge and

applying for Family and Medical Leave Act ("FMLA") leave in violation of the

preceding statutes and the Family and Medical Leave Act of 1993, 29 U.S.C. §

2601 *et seq.* He demanded a jury trial on all claims so triable.

In response, on October 29, 2009, P.J. Cheese moved the District Court

pursuant to 9 U.S.C. § 3[1] and 9 U.S.C. § 4[2] to stay the proceedings and compel

[1] 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[2] 9 U.S.C. § 4 provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement

arbitration in accordance with the arbitration terms of an employment contract purportedly signed by Burch.[3]  The Court ordered Burch to file any opposition to the motion by November 23, 2009.  Burch complied, denying, in an affidavit filed with the court on November 23, that the signature on the alleged arbitration

---

or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

[3] The agreement, which P.J. Cheese authenticated by affidavit, provided:

I recognize that differences may arise between the Company and me during or following my employment with the Company, and that those differences may or may not be related to employment.  I understand and agree that any such differences will be resolved as provided in the Dispute Resolution Policy. . . .  In signing this Agreement, both the Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute.

5

agreement belonged to him.   He did not, however, specifically demand that the authenticity of the signature on the agreement should be decided by a jury.

On December 11, 2009, the District Court denied P.J. Cheese's motion to compel arbitration, concluding that Burch's denial created a dispute of material fact over the authenticity of the arbitration agreement, and that he was therefore "entitled to a trial on the arbitrability question."[4]  Rather than proceed immediately to trial on the signature issue, the Court moved forward with the pretrial proceedings on the merits of Burch's underlying claims.  Specifically, the Court ordered P.J. Cheese to file an answer to Burch's complaint, and entered a Scheduling Order, setting, among other things, the deadline for the completion of discovery, and the dates for the final pretrial conference and trial of the case.  P.J. Cheese complied with the Court's order, filing its answer on February 15, 2010, and proceeding with discovery.

Discovery lasted for approximately ten months.  At its conclusion, P.J. Cheese moved for summary judgment on all claims brought in the complaint.[5]

---

[4] In addition to taking into consideration Burch's sworn affidavit, the District Court noted that "a cursory comparison of the signatures on [Burch's] Affidavit and his EEOC charges with the signature on the [Arbitration] Agreement shows that the signature on the Agreement is unlike the signatures on the Affidavit and the EEOC charges."

[5] Due to several unresolved discovery disputes and a referral to mediation which was subsequently vacated, briefing on the motion was not closed until the fall of 2012.

On March 27, 2013, the District Court ruled on P.J. Cheese's motion, granting summary judgment on Burch's Family Medical Leave Act and Title VII and Section 1981 claims, but denying it as to Burch's Equal Pay Act claim.[6]

Following the Court's ruling on the summary judgment motion, the parties prepared for litigation on Burch's remaining claim. At the final pretrial conference, held on July 11, 2013, the parties returned to the question that had been festering in the background for almost four years—should they be litigating the merits of the case at all? Distilled down to its essence, if Burch's signature on the arbitration agreement was valid, the answer was no; litigation should be halted, and the proceedings should be referred to arbitration. If the signature was *in*valid, the answer was yes; the proceedings should continue to a trial on the merits.

Back in 2009, the Court had already ruled that Burch was "entitled to a trial" on this signature question. All that remained to be decided in advance of such a

---

[6] On September 20, 2013, upon *sua sponte* reconsideration of the Court's summary judgment order, the District Court vacated its ruling on Burch's Title VII wage discrimination claim and denied P.J. Cheese's motion for summary judgment as to that claim.

trial was *who* would resolve the question: a jury or the court.  The District Court asked the parties to brief the issue.[7]

Burch argued that the issue should be tried to a jury.  Specifically, he contended that Section 4 of FAA grants the party alleged to be in default—in this case, Burch—with a statutory right to a jury trial on disputed issues of fact concerning the "making of [an] arbitration agreement," and that he invoked this right with the general jury demand in his complaint.  His demand was ample, he argued, because Federal Rule of Civil Procedure 38 provides that a general demand preserves the party's right to a jury trial on any issues triable to a jury under the Seventh Amendment or a federal statute.

In response, P.J. Cheese argued that the signature issue should be tried to the bench.  Although it agreed that Section 4 of the FAA provided Burch with a statutory right to a jury trial on any disputed facts related to the validity of his signature, it contended that Burch waived this right by failing to timely file a *specific* jury demand on the issue as Section 4 of the FAA requires. Further, Burch's general jury demand under the Federal Rules of Civil Procedure was inapplicable, P.J. Cheese contended, because Section 4 speaks to the specific

---

[7] Before asking the parties to brief the issue, the District Court expressed its tentative view that the plaintiff was *not* entitled to a jury trial on the issue.

8

procedures required to request jury trial on the "making of an arbitration agreement" and the Federal Rules of Civil Procedure become applicable only where the FAA is silent.[8]

The District Court agreed with P.J. Cheese, holding that Burch's failure to request a jury trial on the signature issue "on or before the return day of the notice of application" in accordance with Section 4 of the FAA operated as a waiver of his right to a jury trial on that issue.  Following the District Court's decision, Burch filed an additional motion contending that P.J. Cheese had waived its right to compel arbitration by failing to demand arbitration prior to the commencement of Burch's suit against it and by failing to argue arbitrability in its motion for summary judgment.[9]  The District Court rejected Burch's arguments, concluding that P.J. Cheese only participated in litigation on the merits of Burch's claims after

---

[8] Our precedent supports this position.  *See Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931 (11th Cir. 1990) ("It is only where the Arbitration Act is silent that the Federal Rules of Civil Procedure become applicable.").

[9] Burch also argued that P.J. Cheese waived its right to arbitration by withholding portions of the Dispute Resolution Program Booklet from Burch in discovery despite his repeated requests for the entire document, which Burch claimed contains "crucial arbitration information."  The District Court rejected the argument, noting that the alleged failure to produce a supplementary document in discovery is immaterial to the issue of waiver.

9

being required to do so by court order, and that it had thus not acted "inconsistently with the arbitration right."[10]

On September 17, 2013, the District Court tried the signature issue before the bench. After receiving the relevant testimony from the parties, it concluded that Burch had signed the agreement. Based on this finding, it granted P.J. Cheese's motion to compel arbitration and dismissed the case without prejudice.

Burch now appeals the dismissal of his complaint,[11] contending that the District Court erred by (1) conducting a bench trial on the issue of arbitrability; (2) concluding that P.J. Cheese had not waived its right to arbitration; and (3) failing

---

[10] Burch accompanied his motion to dismiss P.J. Cheese's arbitrability claim with a motion to disqualify the trial judge, citing ex parte communications between the judge and Burch and his attorney, conversations which Burch contended evidenced that the judge would not be impartial in ruling on the arbitrability issue. The District Court denied the motion, concluding that the court had no personal bias or prejudice concerning the parties in the case, nor any personal knowledge of the disputed evidentiary facts in the proceeding.

[11] After filing a notice of appeal with the District Court, Burch sought to supplement the record on appeal pursuant to Federal Rule of Appellate Procedure 10(c) with two affidavits—one prepared by Burch and one by his attorney, describing communications he had with the District Court—and with several e-mails that he had exchanged with District Court concerning proposed pretrial orders and discovery issues. P.J. Cheese argued that the attachments included descriptions of events that were not "evidence or proceedings" under Rule 10(c) and moved the District Court to strike all documents with which Burch sought to supplement the record.

The Court, agreeing with P.J. Cheese that the documents were not covered by Rule 10(c), denied Burch's motion to approve Rule 10(c) statements, and granted P.J. Cheese's motion to strike the documents from the record.

10

to proceed to the trial on arbitrability in a timely manner.  We affirm the District

Court's dismissal, and address each of these arguments in turn.[12]

## II.

In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to

arbitration," *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.

Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006), and to declare a "'national policy

---

[12] In addition to the three chief arguments detailed above, Burch raises—in a circuitous and often unsubstantiated fashion—three additional arguments on appeal that do not merit significant discussion.

First, Burch argues that "in the interests of justice and judicial economy" we should review the District Court's partial grant of summary judgment to P.J. Cheese.  To support this argument, Burch contends he will be unfairly prejudiced if the order is not reversed as the arbitrator is likely to adopt the District Court's reasoning in arbitration.  Burch's contention that the arbitrator will be swayed by an extraneous ruling of the District Court is wholly speculative and without merit.  The District Court's partial grant of summary judgment is vacated and we need not further address Burch's improbable proposition.

Second, Burch argues that the District Court erred in refusing to recuse from the bench trial on the issue of arbitrability.   Instead of putting forward an argument that the District Court abused its discretion in refusing to recuse itself, Burch simply asserts that statements made by the Court gave "[him] and his counsel the sense that the district court had all but already made up its mind on the issue of arbitrability before trial."   Vague and unsupported suspicions regarding a district judge's perspective on an issue before the court do not rise to the level necessary for a judge to recuse, much less to the level required for this Court to reverse the Court's decision for abuse of discretion.  Accordingly, we affirm the District Court's denial of Burch's motion to disqualify.

Third, Burch asserts that the District Court erred in granting P.J. Cheese's motion to strike the statements Burch had filed in an attempt to supplement to the record for appeal.  We review the District Court's evidentiary rulings for abuse of discretion.  *Morro v. City of Birmingham*, 117 F.3d 508, 513 (11th Cir. 1997).  Because Burch cites no authority to support his apparent proposition that the District Court abused its discretion in striking these statements, we affirm the District Court's order granting P.J. Cheese's motion to strike.

11

favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 983, 169 L. Ed. 2d 917 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984). Three sections of the FAA play particularly important roles in achieving that purpose. 9 U.S.C. § 2—the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 74 L. Ed. 2d 765 (1983)—provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable."[13] 9 U.S.C. § 3 directs courts to stay their proceedings in any case raising a dispute on an issue referable to arbitration. And 9 U.S.C. § 4 "authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with [an] arbitration agreement." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987) (quoting 9 U.S.C. § 4).

---

[13] In its entirety, 9 U.S.C. § 2 provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

12

As these provisions embody the "liberal federal policy favoring arbitration agreements," *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted), "doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (emphasis added). This "presumption," however, "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* (citation omitted).

When, as in this case, a party moves a district court to compel arbitration under the FAA, the court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Bazemore*, 827 F.3d at 1333 (citation and quotation marks omitted). If, on the other hand, the making of the agreement is in issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

As in a traditional summary judgment motion, an examination of substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)).  Thus, just as "state law generally governs whether an enforceable contract" exists, state law generally governs whether an enforceable "agreement to arbitrate exists" as well. *Caley*, 428 F.3d at 1368.  To prove the existence of a contract under Alabama law, the party seeking to enforce the contract must prove by a preponderance of the evidence: "an offer[,] an acceptance, consideration, and mutual assent to terms essential to the formation of a contract."  *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

In this case, the District Court applied this standard and concluded that there was a disputed question of material fact over the existence of an authentic arbitration agreement.  In light of this conclusion, it then properly determined that the Court was required—under 9 U.S.C. § 4—to proceed summarily to trial to resolve the disputed fact.

A.

The primary issue on appeal is whether the District Court erred in holding a *bench* trial on the signature issue in spite of Burch's general demand for a jury trial in his complaint. We conclude that that the District Court did not err.[14]

In a civil case, a right to trial by jury may arise either by the Seventh Amendment to the U.S. Constitution or via a federal statute. *Curtis v. Loether*, 415 U.S. 189, 191–92, 94 S. Ct. 1005, 1007, 39 L. Ed. 2d 260 (1974). The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." As evidenced by the Amendment's text, the Constitution does not a "create" a right to a jury trial in civil cases; instead it preserves the right in the federal courts as it existed at common law in 1791, when the Amendment was ratified. *Waldrop v. S.*

_____

[14] Pursuant to the FAA, an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3). The District Court's order granted P.J. Cheese's motion to compel arbitration and dismissed Burch's claims without prejudice, retaining jurisdiction only to enforce any judgment reached in arbitration or consider other appropriate action after the completion of arbitration. An order compelling arbitration and dismissing the plaintiff's underlying claims without prejudice is a "final decision" appealable pursuant to § 16(a)(3). *See Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (holding that an order dismissing an entire case without prejudice "'plainly disposed of the entire case' insofar as compelled arbitration was concerned, 'and left no part of it pending before the court'") (quoting *Green Tree Fin. Corp. v. Randoph*, 531 U.S. 79, 86, 121 S. Ct. 513, 520, 148 L. Ed. 2d 373 (2000)). Accordingly, we have jurisdiction to hear the appeal.

15

*Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994).  Thus, to determine whether a party

has constitutional right to a jury trial, a historical test is applied.[15]  If the issue, in

the context in which it arises today, would have been heard at common law in

1791, it is now triable of right to a jury.  *Id.*  If, on the other hand, the issue would

have been tried to the courts of equity, the party has no constitutional right to a jury

trial on that issue.  *Id.*

A motion to stay court proceedings and compel arbitration is an "equitable

defense."[16]  *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S.

449, 452, 55 S. Ct. 313, 314, 79 L. Ed. 583 (1935); *Matterhorn, Inc. v. NCR Corp.*,

763 F.2d 866, 873 (7th Cir. 1985).  Thus, as a constitutional matter, a party

---

[15] As our precedent makes clear, a two-pronged test is applied to see whether a claim is one for which a jury trial might have been demanded.  First, a court must determine whether the statutory action is analogous to "18th century actions brought in the English courts prior to the merger of the courts of law and equity."  *Waldrop*, 24 F.3d at 156 (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S. Ct. 1339, 1345, 108 L. Ed. 2d 519 (1990)).  Second, the court must examine the remedy sought to see whether it is legal or equitable in nature.  *Id.*

In the interest of clarity, we do not conduct a step-by-step application of the two-pronged test in this case because the parties both agree that the jury trial right at issue here is a statutory one, rather than a constitutional one.  Our holding does nothing to displace the importance of applying the two-pronged test when it is argued that a party's constitutional right to a jury trial is at issue.

[16] The initial version of Section 4 of the FAA took notice of the equitable nature of an order compelling arbitration.  *See* Federal Arbitration Act, Pub. L. No. 68-401, 43 Stat. 883 (1925) ("The party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue . . . to a jury in the manner provided by law for referring to a jury issues in an *equity action*" (emphasis added)).

16

resisting a motion to compel arbitration, such as Burch in this case, has no right to a jury trial on questions of fact related to the making of an arbitration agreement.

In certain circumstances, the party does, however, have a statutory right to a jury trial on the issue. Specifically, 9 U.S.C. § 4 provides that "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue . . . the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury." *See also Matterhorn*, 763 F.2d at 873–74 ("9 U.S.C. § 4 creates an explicit right to trial by jury in the proceeding to determine whether an order to arbitrate should be issued."). In this case, because Burch's denial put the making of the arbitration agreement at issue, he had statutory right under 9 U.S.C. § 4 to try that disputed issue to a jury.

That Burch had a statutory *right* to a jury trial does not mean, however, that the District Court necessarily erred in denying him one. A party waives his right to a jury trial unless a timely and proper demand is made upon the courts. *LaMarca v. Turner*, 995 F.2d 1526, 1545 (11th Cir. 1993). The District Court, at P.J. Cheese's behest, concluded that Burch's demand was untimely and improper under 9 U.S.C. § 4, and that Burch therefore waived his right to a jury trial on the disputed issue of fact related to the making of the arbitration agreement.

17

The propriety of the District Court's ruling turns in large part on which statute sets the applicable procedural requirements for demanding a jury trial on issues related to the making of an arbitration agreement:  Rule 38 of the Federal Rules of Civil Procedure or Section 4 of the Federal Arbitration Act.  Burch contends that the procedures in Rule 38 control, and that the general jury demand in his complaint therefore preserved his statutory right to a jury trial on the disputed signature issue.  P.J. Cheese contends that the procedures in Section 4 control, and that Burch waived his statutory right to a jury trial by failing to make a *specific* jury demand on the issue as Section 4 purportedly requires.  We agree with P.J. Cheese.

In the vast majority of civil cases in federal court, Federal Rule of Civil Procedure 38 sets forth the applicable procedure for demanding a jury trial on disputed questions of fact.  Under the rule, for a party to avoid waiving its right to a jury trial—as "[preserved] by the Seventh Amendment to the Constitution" or "provided by a federal statute"—it must serve the other parties with a written demand for a jury trial "no later than [fourteen] days after the last pleading directed to the issue is served."  Fed. R. Civ. P. 38(b)(1).  "In its demand, a party may specify the issues that it wishes to have tried by a jury."  *Id.* at 38(c).  If, however,

18

the party does not specify in its demand which issues it wants tried, "it is considered to have demanded a jury trial on all the issues so triable." *Id.*

Rule 38 does not apply in every situation, however. Specifically, Federal Rule of Civil Procedure 81 provides that the Federal Rules of Civil Procedure control proceedings operating under "9 U.S.C., relating to arbitration . . . *except as [9 U.S.C.] provide[s] other procedures*." Fed. R. Civ. P. 81(a)(6)(B) (emphasis added). In interpreting this provision we have explained, "[i]t is only where the Arbitration Act is silent that the Federal Rules of Civil Procedure become applicable." *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931 (11th Cir. 1990).

Because Burch attempted to invoke his statutory right to a jury trial under Section 4 of the FAA, we must determine whether the provisions of Section 4 provide "other procedures" for demanding a jury trial on the issue of arbitrability. If they do, then the mechanisms detailed in Rule 38 are cast aside and the procedures detailed by the FAA fill the resulting void.

Our inquiry, as always, begins with the statutory text. *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself." (citations omitted)). In relevant part, Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any

19

United States district court. . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue.  Where such an issue is raised, *the party alleged to be in default may . . . on or before the return day of the notice of application, demand a jury trial of such issue*, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4 (emphasis added).

"When the words of a statute are unambiguous . . . judicial inquiry is complete."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992)  (quotation marks and citation omitted).  Section 4 of the FAA unmistakably provides a specific procedure—apart from those in Federal Rule of Civil Procedure 38—for demanding a jury trial on the issue of arbitrability.  The statute first sets forth *who* is entitled to make a jury demand on an issue related to the "making of the arbitration agreement"—the "party alleged to be in default" in proceeding under the agreement.  9 U.S.C. § 4.  It then sets forth *when* the specific party must make its demand—"on or before the return day of the

notice of application" to submit to arbitration.[17]  *Id.*  Then, finally, it sets forth *how* a party must make its demand—with a specific "demand [for] a jury trial of *such* issue."[18]  *Id.* (emphasis added).  In short, because Section 4 is far from "silent" on the mechanisms required to invoke the statutory right to a jury trial that it provides, its procedures displace the general jury demand procedures provided in Federal Rule of Civil Procedure 38.

Accordingly, we must evaluate whether the general jury demand in Burch's complaint complied with the Section 4's procedural requirements for demanding a jury trial on an issue related to the making of an arbitration agreement.   For the reasons explained below, it did not.

To preserve his statutory right to a jury trial on the making of his arbitration agreement, "the party alleged to be in default"—Burch—was obligated to demand a jury trial of "*such issue*" "on or before the return day of the notice of application"

---

[17] Or, in more common parlance, before the deadline set by the district court for filing an opposition to the motion to compel arbitration.

[18] In fact, the existence of the separate procedure is so clear that Burch appears to acknowledge it at various points in his brief.  *See, e.g.*, Appellant's Br. at 42 ("Burch had the choice according to 9 U.S.C.[] 4 of the FAA of demanding a jury trial on the issue of whether he signed it, as long as he made his decision prior to the day he had to respond to P.J. Cheese's motion to stay the proceedings and compel arbitration.").

to submit to arbitration—November 23, 2009.[19]  9 U.S.C. § 4 (emphasis added).  In its use of the term "such issue," Section 4 clearly contemplates that a party must make a *specific* demand for a jury trial on a *specific* issue related to the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same," to preserve its right to a jury trial on the issue.  *Id.*  Here, it is undisputed that Burch's only jury demand came in the form of a general demand in his complaint.  Because Burch failed to demand a jury trial on a specific issue related to the making of the arbitration agreement, he waived his right to a jury trial on that issue.  Accordingly, the District Court's decision to hold a bench trial on the issue of arbitrability is affirmed.[20]

---

[19] Both parties agree that the District Court's order directing Burch to file any opposition to P.J. Cheese's Motion to Stay and Compel Arbitration by November 23, 2009 established that date as the dispositive "return day of the notice of application."

[20] In an unpublished case, the Fifth Circuit has similarly adopted this interpretation of 9 U.S.C. § 4.  *See Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 365 n.5 (5th Cir. 2015) (explaining that that a party who had made a timely general demand for a jury trial in his complaint "may have been entitled to a jury trial on [an issue related to the making of an arbitration agreement] if he had requested one, but he did not.").  As have the vast majority of district courts.  *See, e.g., Dalon v. Ruleville Nursing and Rehab. Ctr., LLC*, No. 4:15-CV-00086, 2016 WL 498432, at *2 n.3 (N.D. Miss. Feb. 8, 2016) ("There is no dispute that [the plaintiff] requested a jury trial for his underlying claims and has continued to assert this right in his briefing.  However, a general jury demand in a complaint does not obviate the need to specifically request a jury trial under Section 4 of the FAA"); *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 448 n.5 (M.D.N.C. 2015) (holding that because the plaintiff—who had made a general jury demand in his complaint—did not demand a jury trial in his response to the defendant's motion to compel arbitration, he "did not timely demand a jury trial on [the arbitration] issue"); *Tyus v. Va. Coll.*, No. 2:15-CV-211, 2015 WL 4645513, at *1 (M.D. Ala. Aug. 4, 2015) (same); *Castillo v. Lowe's HIW, Inc.*, No. C13-4590, 2013 WL 12143002, at *4

22

B.

The second issue on appeal is whether the District Court erred in concluding that P.J. Cheese did not waive its right to compel arbitration by participating in the litigation of the merits of the case after its motion to compel arbitration had been preliminarily denied.  We find no error, and affirm.

A district court's ruling on whether a party's conduct amounts to waiver of arbitration is subject to *de novo* review.  *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 n.18 (11th Cir. 2002).  To establish waiver it must be shown that:

<hr>

(N.D. Cal. Dec. 2, 2013) (same); *King v. Capital One Bank (USA), N.A.* No. 3:11-cv-00068, 2012 WL 4404862, at *1 (W.D. Va. Sept. 25, 2012) ("A general jury demand in a complaint does not obviate the need to specifically request a jury trial under Section 4 of the FAA."); *Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10-2373, 2011 WL 6702424, at *9 (E.D. Cal. Dec. 21, 2011) ("Since [the plaintiff—who had made a general jury demand in his complaint—] did not demand a jury trial on or before the return day for [the movant]'s motion to compel arbitration, he no longer has the right to demand a jury trial on the issue of whether he entered into an agreement to arbitrate"); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-Civ., 2009 WL 1851131, at *4 (S.D. Fla. June 29, 2009) (same); *Geoffroy v. Wash. Mut. Bank*, 484 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (same); *Starr Elec. Co. v. Basic Constr. Co.*, 586 F. Supp. 964, 967 (M.D.N.C. 1982) (explaining that a general jury demand does not obviate the need for a specific demand under Section 4 because "9 U.S.C. § 4 has specific provisions for the demand and waiver of jury trial under Title 9. The demand and waiver provisions of Fed. R. Civ. P. 38 are inapplicable under Fed. R. Civ. P. 81").  *But see Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, No. CV 11-1219, 2017 WL 89556, at *1 (D.N.J. Jan. 9, 2017) (concluding that a general demand in a complaint is ample to trigger the plaintiff's right to a jury trial on the issue of arbitrability); *Walker v. Magic Burger, LLC* No. 6:14-cv-1751, 2015 WL 500909, at *2 n.5. (S.D. Fla. Feb. 5, 2015) ("Plaintiff's Complaint includes a demand for jury trial; accordingly, a jury trial is required on the issue of arbitrability."); *Graham v. Trugreen Landcare of Ala., LLC* 2:11-CV-2385, 2012 WL 2357677, at *4 n.7 (N.D. Ala. June 19, 2012) ("Whether the court or jury determines the arbitrability issue is up to the party objecting to the arbitration agreement and Plaintiff has requested a jury trial in his Complaint." (citation omitted)).

"(1) the party seeking arbitration substantially participate[d] in litigation to a point inconsistent with an intent to arbitrate; and (2) [that] this participation result[ed] in prejudice to the opposing party." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quotation marks and citation omitted). "Prejudice exists when the party opposing arbitration undergo[es] the types of litigation expenses that arbitration was designed to alleviate." *Id.* (alteration in original) (quotation marks and citation omitted).

In considering waiver, we are mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of contract language itself or an allegation of waiver." *Id.* at 24–25. Consequently, "the party who argues waiver 'bears a heavy burden of proof.'" *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011) (citation omitted).

Here, Burch argues that P.J. Cheese's decision to continue litigating the merits of the case after the District Court initially denied its motion[21] to compel arbitration was inconsistent with an intent to arbitrate.[22]

We disagree.  To preserve its right to arbitrate, a party is not required to gamble a default judgment against it.  Recognizing this common-sense notion, we have explained that a party's "orderly participation in [a] lawsuit," after a district court decides to delay a final ruling on a determination on arbitrability is not

---

[21] In the District Court, Burch also argued that P.J. Cheese waived its arbitration right by waiting over two years after the company terminated Burch's employment to file its motion to compel arbitration.  Burch abandons this argument on appeal, likely for good reason.  *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000) (explaining that a party is under no obligation to make a "pre-suit demand for arbitration").

[22] As he did in the District Court, Burch also argues that P.J. Cheese waived its right to arbitration by withholding portions of the Dispute Resolution Program Booklet from Burch in discovery despite his repeated requests for the entire document, which Burch claimed contains "crucial arbitration information."  Because the purported withholding of a booklet entirely supplemental to the principal arbitration agreement is immaterial to the issue of waiver, we reject Burch's argument.

Additionally, Burch argues that P.J. Cheese waived its right to arbitration by failing to press an interlocutory appeal of the District Court's initial denial of its motion to compel arbitration.  Burch raises this argument for the first time on appeal.  "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (internal quotation marks and citation omitted).  Burch provides no argument that there is an exceptional circumstance to merit our plain error review. Accordingly, we decline to review this argument.  We do note, however, that failure to press an interlocutory appeal is not dispositive of whether a party waives the right to compel arbitration.  *Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir. 1976).

25

inconsistent with the party's right to arbitrate.  *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970). [23]

This precedent is particularly applicable here.  In this case, P.J. Cheese "promptly requested arbitration upon notification of this lawsuit," and only participated in litigation on the merits of the case after it was expressly ordered to do so by the District Court.  Court proceedings should not be treated as "a sort of judicial tightrope which the party seeking arbitration walks at his peril."  *Id.*  To conclude that P.J. Cheese acted inconsistently with its right to arbitrate, we would have to conclude that P.J. Cheese should have disobeyed the District Court's order.  We decline to adopt such a position.

Because we find that P.J. Cheese's participation in litigation on the merits of Burch's claims after the District Court's denial of its motion to compel arbitration was not inconsistent with its right to arbitration, consideration of the prejudice prong of the two-part waiver test is unnecessary.  *See Ivax Corp.*, 286 F.3d at 1320 (finding it "unncesssary to discuss the prejudice prong of our two-part waiver test" after the Court's determination that the defendant had not acted inconsistently with

---

[23] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

its right to arbitration).  The District Court's holding that P.J. Cheese did not waive its right to arbitration is affirmed.

### C.

Burch additionally contends that the District Court erred in failing to proceed summarily to a trial on the issue of arbitrability immediately after it determined that there was dispute of material fact regarding the existence of an authentic arbitration agreement.  This argument is not properly before us and we decline to review it for plain error.

"Ordinarily an appellate court does not give consideration to issues not raised below."  *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S. Ct. 719, 721, 85 L. Ed. 1037 (1941).  However, this principle is not unyielding.  "In an exceptional civil case, we might entertain the objection by noticing plain error."  *S.E.C. v. Diversified Corp. Consulting Grp.*, 378 F.3d 1219, 1227 n.14 (11th Cir. 2004); *see also Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) (recognizing that the plain error doctrine "rarely applies in civil cases").  Under the civil plain error standard, "we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice."  *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982).

In asserting for the first time on appeal that the District Court committed reversible error in compelling arbitration four years into litigation, Burch effectively argues that if a court fails to proceed to trial on a disputed question of fact within some specified time period, it forfeits its authority to order arbitration. To support this proposition, Burch cites solely to Section 4 of the FAA which states that when a trial court determines a genuine dispute of fact exists as to arbitrability, the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Although it is true that a goal of arbitration is to ensure the swift adjudication of claims, in the absence of countervailing law delimiting the court's capacity to order arbitration under Section 4, we decline to evaluate or adopt any such bright line rule when the record is devoid of any indication that affirming the District Court's order would result in a miscarriage of justice to Burch.

For a period of forty-five months, Burch never once petitioned the Court to hold a trial on arbitrability. He applied, on multiple occasions, for various extensions in the court proceedings. Finally, when discovery was completed, he seized the opportunity to brief the District Court on why he was still entitled to a jury trial on the question of arbitrability, but never claimed the Court no longer had the authority to order arbitration under the FAA. If arbitration truly would cause Burch the "great injustice" he now claims extemporaneously on appeal, Burch had

28

ample opportunity to implore the Court below to proceed to try the signature issue. Accordingly, we conclude that our refusal to entertain this argument will not result in a miscarriage of justice in the present situation.

## III.

Based on the reasons stated above, we affirm the District Court's dismissal of Burch's claims and its order compelling the parties to submit their dispute to arbitration.

**AFFIRMED.**