[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-11464
Non-Argument Calendar

————————————————

D.C. Docket No. 4:16-cv-00507-HTC

WESLEY TIMOTHY FULLARD,

Plaintiff-Appellant,

versus

MARY W. THOMAS,
RN,
C. RHODES,
LPN,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————————

(August 20, 2021)

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Wesley Timothy Fullard, proceeding *pro se*, appeals a jury's verdict in favor of the defendants in his 42 U.S.C. § 1983 civil rights action, which alleged a violation of his Eighth Amendment rights based on the defendants' deliberate indifference to his serious medical needs. On appeal, he argues that (1) the district court plainly erred and he is entitled to a new trial because during the jury trial he wore his prison clothing and shackles; (2) the district court plainly erred in permitting the use of a special verdict form, which was confusing to the jury; (3) the district court plainly erred when it pressured Fullard to call Dr. Thomas Noel first, when Fullard wanted him to testify last; and (4) the district court erred when it denied his motion for a new trial. After review, we affirm.

## I.    Background

After suffering a heart attack while incarcerated at Florida's Jefferson Correctional Institution ("JCI"), Fullard brought a § 1983 action against JCI nurses Mary Thomas and Carrier Rhodes. He alleged that on August 8, 2014, at approximately 7:00 p.m., he started having chest pains and shortness of breath. Fullard had experienced four prior heart attacks and had previously had a quadruple bypass. Upon experiencing these symptoms, Fullard returned to his cell and took a nitroglycerin pill that the medical unit had given him to take if he had chest pains. Fullard then informed an officer that he thought he was having a heart attack, and officers escorted Fullard to the medical department.

2

Upon arrival at the medical department at approximately 7:30 p.m., Fullard told Nurse Rhodes and Nurse Thomas that he thought he was having a heart attack. They hooked Fullard up to the EKG machine, but the machine would not work. The nurses suggested that maybe Fullard was just experiencing "gas pain" and gave him medicine to treat such pain, despite Fullard's continued protests that he was having a heart attack. The medication did not help, and Fullard continued to complain of severe pain. Around 1:00 a.m., the nurses got the EKG machine to work, and Fullard's results were abnormal. The nurses instructed him to lay down in the infirmary. An ambulance eventually arrived and transported Fullard to the hospital.

Fullard arrived at the hospital around 3:30 a.m., and testing showed that he was having a heart attack. He had a surgical procedure the next day and was discharged approximately four days later. He asserted that, upon his discharge, the doctor told him that they had not been able to fix the blockages in his heart, that "it was to[o] late," and that he had varying degrees of blockages and damage to various parts of his heart.

Fullard maintained that, because of the delay in treatment, he suffered permanent heart damage and is experiencing "classic signs of congest[ive] heart failure." He argued that the nurses violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs.

3

The case proceeded to a two-day jury trial before a magistrate judge, at which Fullard proceeded *pro se*. Prior to the start of jury selection, the magistrate judge informed Fullard, who was wearing prison clothing, that the court was looking to see whether there was a suit available in the courthouse for Fullard to wear, and that he could have someone bring him a suit if desired. Fullard stated that he had asked his parents not to come because they were older and did not live in the area. No suit was found and Fullard proceeded with the trial in his prison clothing, but he never objected to appearing in his prison clothing or the alleged shackles.[1]

During a pretrial discussion, the magistrate judge asked Fullard whether he would be calling his sole witness, Dr. Noel, the doctor that treated Fullard at the hospital, first. Fullard indicated that he wanted to call one of the defendants first and that he wanted to call the doctor last. The magistrate judge indicated that she would appreciate it if Fullard could "get [Dr. Noel] in early so we can get him back to the hospital" because he had asked to be called as early as possible given that "he has patients the entire day." Fullard responded, "Okay. That's fine."

After opening statements, Fullard called Dr. Noel as his first witness. Dr. Noel testified that Fullard had the heart attack because a vein graft from his prior

---

[1] The record contains no indication as to whether Fullard was shackled or not. For the purposes of this appeal, we accept his assertion that he was shackled.

bypass had developed a clot and was a "hundred percent blocked." He could not opine on when the occlusion occurred or whether any alleged hours long delay in treatment contributed to the issue. On cross-examination, Dr. Noel confirmed that he did not encounter any problems treating Fullard "based on the time that [Dr. Noel] got him."

Nurse Thomas testified that she did not have a shift at JCI on the day in question and that she never examined or treated Fullard.[2] Nurse Rhodes testified that she was working the 3 p.m. to 11 p.m. shift and treated Fullard at approximately 9:40 p.m. Based on Fullard's complaints, she conducted a chest pain protocol examination, which was the standard protocol. Based on his normal vitals and her medical experience, she did not believe Fullard was having a heart attack. She gave Fullard two more nitroglycerin pills. Rhodes also stated that she asked the nurse taking over the next shift to "keep an eye on [Fullard]." Rhodes denied ever working on an EKG machine or having encountered one that was not working during her tenure at JCI. She also denied giving Fullard the alleged gas medication, although there was documentation in Fullard's records that he was

---

[2] Fullard attempted to impeach Nurse Thomas's testimony with her statement from a pretrial affidavit that a medical document from the night of Fullard's heart attack contained her signature, which Fullard argued demonstrated that Nurse Thomas treated Fullard. During the trial, however, Nurse Thomas testified that: (1) the signature on the form was different from hers; (2) the form was drafted during a shift that she did not work; and (3) she was not treating patients at the time in question because she was still in training. She maintained that, if it was her signature, she had signed the document in error because she did not prepare it and was not there when Fullard was treated.

5

given gas medication later that evening.  Rhodes testified that she had no further interaction with Fullard.  Finally, Fullard testified and provided details that mirrored the allegations in his complaint.

After both sides rested, the defendants' counsel requested that this Circuit's special verdict form 2.3.2 be used.[3]  The magistrate judge made the defendants' requested changes to the verdict form and inquired as to whether there were any objections.  Fullard confirmed he was okay with the changes.  The jury deliberated for just over an hour and returned a verdict in favor of the defendants.

A couple of weeks later, Fullard filed a motion, arguing in relevant part, that there was overwhelming evidence in his favor and that he "should have prevailed."  The defendants opposed the motion.  The magistrate judge construed the motion as

---

[3] The special verdict form provided as follows:

Do you find from a preponderance of the evidence:
    1.  That Maria Thomas intentionally committed acts that violated Wesley Fullard's right to medical care?
        Answer Yes or No_____

    If your answer is "No," this ends your deliberations as to Maria Thomas, and you should proceed to question 5.  If your answer is "Yes," go to the next question.
. . . .
    5.  That Carrie Rhodes intentionally committed acts that violated Wesley Fullard's right to medical care?
        Answer Yes or No_____

    If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form.  If your answer is "Yes," go to the next question.

a motion for a new trial on the ground that the verdict was against the great weight of the evidence, pursuant to Federal Rule of Civil Procedure 59, and denied the motion. This appeal followed.

## II.    Discussion

Three of Fullard's arguments—his wearing of prison clothing at trial, the use of the special verdict form, and the magistrate judge allegedly pressuring him to call Dr. Noel first—were never raised in the district court. "Ordinarily an appellate court does not give consideration to issues not raised below." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) (quotation omitted). Nevertheless, "[i]n an exceptional civil case, we might entertain the objection by noticing plain error." *Id.* (quotation omitted); *see also Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) (recognizing that the plain error doctrine "rarely applies in civil cases"). "Under the civil plain error standard, we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Burch*, 861 F.3d at 1352 (quotation omitted). This is not one of those rare cases.[4] Therefore, we do not consider these issues.

---

[4] To prevail on his deliberate indifference claim, Fullard needed to establish that (1) he had an objectively serious medical need; (2) the defendant was subjectively aware of the serious medical need and acted with deliberate indifference; and (3) he suffered an injury that "was caused by the defendant's wrongful conduct." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Given the overwhelming evidence in favor of the defendants, we cannot say that the alleged errors resulted in a miscarriage of justice. *See S.E.C. v. Diversified Corp. Consulting*

7

Fullard's only remaining argument is that the district court erred when it denied his motion for a new trial. We review the denial of a Rule 59(a) motion for a new trial for an abuse of discretion. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1255 (11th Cir. 2016). "A losing party may . . . move for a new trial under Rule 59 on the ground[] that the verdict is against the weight of the evidence . . . ." *Id.* at 1254 (quotation omitted). The district court is then free to weigh the evidence and may, in its discretion, grant a new trial if it believes that the verdict is against the clear weight of the evidence. *Id.* "Deference to the district court is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." *Id.* at 1255 (quotation omitted).

---

*Grp.*, 378 F.3d 1219, 1227 n.14 (11th Cir. 2004) (declining to review alleged error because in light of "the overwhelming evidence of liability" we could not say that the alleged error "resulted in a miscarriage of justice").

Moreover, even if we considered these claims, Fullard cannot establish plain error. Specifically, with regard to his claim concerning his wearing of prison clothes and shackles during the trial, Fullard does not cite any case from this Circuit or the Supreme Court addressing the use of prison attire or shackles during a civil trial. Therefore, Fullard cannot establish plain error. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) ("It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.").

With regard to his challenge to the special verdict form, the record confirms that the jury instructions and verdict form—which was taken from our Pattern Instructions—accurately reflected the law and did not mislead the jury. Thus, there was no error.

Finally, Fullard cannot establish that the magistrate judge plainly erred in allowing him to call Dr. Noel as his first witness. As the plaintiff, Fullard had to go first and present his case. *See Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 970 (11th Cir. 2002) ("[I]n a § 1983 action, the plaintiff bears the burden of persuasion on every element."). And although Fullard was *pro se*, district court judges have no obligation to act as *de facto* counsel to *pro se* litigants or provide personal instruction on courtroom procedure or trial strategy. *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

Here, the district court did not abuse its discretion by denying Fullard's motion for a new trial. As the district court noted, the jury could have credited the defendants' testimony and found that their actions did not rise to the level of deliberate indifference, which is a determination well within the jury's purview. *See Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 812 (11th Cir. 2020) (explaining that the "jury [is] entitled to weigh the evidence"). Accordingly, we affirm the denial of Fullard's motion for a new trial.

**AFFIRMED.**