In the
# United States Court of Appeals
## For the Seventh Circuit

No. 25-2127

RASHAAN CARTER,

*Plaintiff-Appellee,*

*v.*

SP PLUS CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 25-cv-312 — **Elaine E. Bucklo**, *Judge.*

ARGUED FEBRUARY 12, 2026 — DECIDED APRIL 15, 2026

Before EASTERBROOK, PRYOR, and MALDONADO, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Shortly after Rashaan Carter filed this suit based on state and federal minimum-wage statutes, the district judge entered a stay in favor of arbitration. The stay rested on a box checked during Carter's "onboarding" process at SP Plus, the employer.

The district judge later acknowledged that she had jumped the gun by granting the employer's motion without notice to Carter. SP Plus had accompanied its motion with a

declaration describing its hiring processes and representing
that each new employee fully reviews every section of every
agreement, so that if a given box has been checked the em-
ployee must have given at least verbal assent. But after receiv-
ing the district judge's initial decision, Carter filed an affidavit
declaring that Brenjy Etienne, on SP Plus's human-relations
staff, filled out and "signed" most of the forms (including the
assent to arbitration) on Carter's behalf, not explaining what
they were and not offering him an option to decline or even
allowing him to see the computer screen that set out the
choices. If that is so, then Carter has not agreed to arbitrate.
This led the district judge to lift her stay, writing that

> defendant fails to engage with plaintiff's account of his onboard-
> ing process, which calls into question defendant's view that plain-
> tiff's consent to arbitrate must be inferred from the presence of the
> initials "Rc" and a check in the box next to "Employee Electronic
> Signature" on the electronic document captioned "Mutual Agree-
> ment to Arbitrate All Claims." On the record before me, I cannot
> determine that a valid agreement to arbitrate was formed. Accord-
> ingly, upon reconsideration, defendant's motion to stay pending
> arbitration is denied.

At this point SP Plus might have proffered evidence contra-
dicting Carter's affidavit. Instead it filed a notice of appeal,
and jurisdiction is the first question we must address.

According to 9 U.S.C. §16(a)(1), an appeal may be taken
from an order "(A) refusing a stay of any action under section
3 of this title [9 U.S.C. §3], [or] (B) denying a petition under
section 4 of this title [9 U.S.C. §4] to order arbitration to pro-
ceed". SP Plus tells us that the district court's order on recon-
sideration is one "denying a petition under section 4 to order
arbitration to proceed." More likely it is one refusing a stay
under §3, because Carter rather than SP Plus is the plaintiff.
Either way we look at it, however, the judge denied a motion
but did not state explicitly whether she had denied SP Plus's

request for arbitration. Was the district judge's next step going to be litigation on the merits or an evidentiary hearing to determine whether Carter himself checked the box? If the former, then the request for arbitration has been denied, but if the latter, then the decision has simply been postponed. A delay during the evaluation of evidence differs from a denial that is appealable under §16(a)(1)(B).

Section 4 provides, among other things:

> Five days' notice in writing of such application [for arbitration] shall be served upon the party in default. … The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. … If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may … demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.

The district judge stated that neither she nor SP Plus had given Carter the required notice, let alone offered a trial to determine what happened. This implies that the order rescinding the premature directive to arbitrate is not final and that the appeal must be dismissed.

Yet a party entitled to a hearing or trial is free to relinquish that right, a principle as true in proceedings under §4 as in other litigation. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347–

48 (11th Cir. 2017); see also *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997) (observing generally that statutory rights can be waived). Some statutes (e.g., 15 U.S.C. §77n) forbid waivers, but §4 does not. SP Plus wants us to direct the district court to hold a hearing, yet it did not ask the judge for one. In the district court, SP Plus did not evince a desire to present evidence in response to Carter's. A party can't keep the district court in the dark about the existence of an evidentiary dispute and then ask for relief on appeal. As far as anyone could tell from the papers that SP Plus filed in the district court, it had nothing to say in response to Carter's affidavit.

It would have been easy to file an affidavit from Brenjy Etienne stating that Carter personally agreed to arbitration—easy, that is, if Etienne remembers obtaining his assent. But if Etienne remembers things as Carter narrated them, and the electronic trail is inconclusive, then SP Plus lacks essential evidence. Having said nary a peep on the subject in the district court, SP Plus forfeited any opportunity for a hearing. This means that the district court's order conclusively denied the request for arbitration and so is appealable.

It also means that the district court's order cannot be disturbed on appeal. Carter swears that he did not agree to arbitrate. Whether someone has agreed to arbitrate is a question for the court rather than the arbitrator, *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986), and the evidence in this record does not show that the district court's conclusion is clearly erroneous.

SP Plus tells us that we must place a thumb on the scale in favor of arbitration, which it deems a favorite of the law. Its brief asserts that there is "a strong federal policy favoring arbitration" that overrides quibbles such as Carter's. Yet the

Supreme Court has held that there is no such policy. Instead the federal policy

> is to make "arbitration agreements as enforceable as other contracts, but not more so." … Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. … If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citations omitted). SP Plus does not discuss *Morgan* or any similar decision by the Supreme Court. Instead it denigrates Carter's affidavit as "self-serving," as if that entitled a court to disregard it. See *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (overruling decisions that allowed judges to devalue self-serving affidavits made on personal knowledge). A brief that repeats canards expressly rejected by decisions such as *Morgan* and *Hill* is hard to take seriously.

AFFIRMED