[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13674

_____

D.C. Docket No. 1:18-cv-25395-MGC

SOUTHEAST POWER GROUP, INC.,
a Florida corporation
formerly known as
Southeast Diesel Corp.,

                                                        Plaintiff - Appellant,

versus

VISION 33, INC.,
a Delaware corporation,
SAP AMERICA, INC.,
a Delaware corporation,

                                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 6, 2021)

Before JORDAN, JILL PRYOR and BRANCH, Circuit Judges.

JILL PRYOR, Circuit Judge:

Southeast Power Group, Inc., a manufacturer and distributor of generators, required complex software to better harness and share data among its subdivisions. Southeast selected SAP America, Inc., a software creator, and Vision 33, Inc., a software installer, to fulfill that need. When the software implementation failed, Southeast sued SAP and Vision 33, alleging breach of contract and negligence.

The district court dismissed Southeast's claims against SAP and Vision 33 for *forum non conveniens* based on a forum selection clause in the installation agreement between Southeast and Vision 33. In deciding whether the district court erred, we face two questions: Did Vision 33 waive its right to rely on the forum selection clause? And if the answer is no, what effect does the forum selection clause have in this multiparty litigation given that Southeast and Vision 33 agreed to the clause, but SAP did not? Because we conclude that Vision 33 waived its right to rely on the forum selection clause, we have no occasion to consider the forum selection clause's effect.

The district court determined implicitly that Vision 33 did not waive its right to enforce the forum selection clause. After careful consideration, and with the benefit of oral argument, we conclude that the district court erred. Vision 33's participation in the litigation was inconsistent with the intent to invoke a forum

2

selection clause. And Vision 33's delayed invocation of the clause prejudiced Southeast. We therefore reverse and remand to the district court for further proceedings.

## I.    BACKGROUND

### A.    Factual Background

Southeast owned four subsidiaries and its operations spanned three states when it decided to upgrade its business functions to better facilitate the sharing of data among its units.[1] Southeast chose SAP to fulfill its software needs, and the two companies entered into a licensing agreement. On the same day, Southeast entered into a distinct agreement with Vision 33, a partner of SAP that specialized in the installation of SAP's software. SAP had recommended Vision 33 to Southeast for installation of the software. Typically, the installation of software like the one SAP created and licensed to Southeast takes 6 to 12 months.

Vision 33's attempt to integrate SAP's software with Southeast's business operations failed. More than four years after Southeast contracted with SAP and Vision 33, the software still was not operational. The failed implementation of SAP's software resulted in, among other things, the destruction of data Southeast

---

[1] In deciding whether the district court erroneously dismissed the complaint for *forum non conveniens*, we accept as true the well-pleaded allegations in the complaint. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020). We thus recite the facts as Southeast has alleged them.

3

had collected, delayed production of Southeast's generators, and labor costs wasted in attempting to remedy the problems.

## B.    Procedural Background

In November 2018, Southeast filed its complaint in Florida state court, alleging that Vision 33 and SAP were liable for the failed installation of SAP's software.  Against Vision 33, Southeast alleged breach of contract.  Against SAP, Southeast alleged breach of express warranty and negligent referral by SAP of Vision 33 to install the software.  From both defendants, Southeast sought the lost money it paid for installation of the software as well as lost past and future profits, goodwill, labor, and fees paid to a third-party installer who remedied the failed software implementation.  SAP removed the case to the United States District Court for the Southern District of Florida.

In January 2019, both Vision 33 and SAP moved to dismiss for failure to state a claim.  Vision 33 argued that Southeast's contract claim should be dismissed because Southeast failed to specify the contract language that Vision 33 allegedly breached.  Vision 33 also argued that even if Southeast adequately pled a breach of contract, its claim should nonetheless be dismissed because Southeast "improperly included damages such as lost profits, lost goodwill, lost productivity, etc.[,] in a clear cut violation of the parties' agreement to limit liability."  Doc. 14

4

at 9.[2]  Vision 33 made this remedies-based dismissal argument in two parts.  First,

it argued that California's substantive law controlled Southeast's breach of contract

claim because the Southeast-Vision 33 agreement contained a choice of law clause

dictating that the "[a]greement shall be governed by and construed in accordance

with the laws applicable in the state of California."  Doc. 1-1 at 20.  Second, it

argued that, under California substantive law, Southeast's claims for lost profits,

goodwill, and productivity failed because California law recognizes the validity of

limitation of liability provisions like the one in the Southeast-Vision 33 agreement,

which limited liability to the "total cost of fees invoiced and paid for by

[Southeast]."  *Id.* at 21.[3]

Southeast responded to both motions to dismiss, and Vision 33 and SAP

replied to those responses.  In its reply, Vision 33 again argued that the choice of

law clause in the Southeast-Vision 33 agreement should be enforced and requested

that the court apply California substantive law to Southeast's claim against it.

During this round of briefing, the district court prepared for further litigation

of Southeast's claims in the Southern District of Florida by issuing two orders.

The first was a scheduling order.  It set deadlines for the parties to amend the

pleadings, complete discovery, file dispositive motions, and submit their joint

---

[2] "Doc." numbers refer to the district court's docket entries.

[3] The arguments SAP raised in its motion to dismiss are not relevant to this appeal.

5

pretrial stipulation. It also set the trial date and provided that trial would occur in Miami, Florida. The second referred the case to mediation. Following the court's mediation order, Southeast—with SAP's and Vision 33's consent—secured a Miami-based mediator to conduct the mediation in Miami. Around this time, the parties also began discovery. Southeast made its initial disclosures to SAP and Vision 33, and Vision 33 propounded discovery requests on Southeast.

In June 2019, roughly two months after the parties began exchanging discovery requests and about two months before the deadline for the close of fact discovery, the district court raised the forum selection clause in the Southeast-Vision 33 agreement for the first time in the litigation. The district court had discovered that the provision of the Southeast-Vision 33 agreement containing the California choice of law clause also contained a clause declaring that the agreement was "subject[] to the exclusive jurisdiction of the courts of the state of California." Doc. 1-1 at 20.[4] In an order to show cause, the district court instructed Southeast and Vision 33 to produce a joint memorandum explaining

---

[4] The entire provision reads: "This Agreement shall be governed by and construed in accordance with the laws applicable in the state of California and shall be subjected to the exclusive jurisdiction of the courts of the state of California." Doc. 1-1 at 20.

why the court had "jurisdiction over the matter in light of the express terms of the [a]greement." Doc. 50.[5]

In response, Southeast and Vision 33 filed a joint memorandum addressing the forum selection clause. At the same time, Vision 33 filed a motion to dismiss for *forum non conveniens* based on the clause. In the joint memorandum and its response to Vision 33's motion, Southeast argued that Vision 33 waived its right to enforce the clause because Vision 33 failed to timely raise the issue, prejudicing Southeast. Southeast also argued that, even if Vision 33 had not waived its right to enforce the forum selection clause, SAP's presence in the case and the location of the witnesses in Florida favored the denial of Vision 33's motion to dismiss for *forum non conveniens*.

Vision 33 argued that it did not waive its right to invoke the forum selection clause because it neither initiated, nor filed a dispositive motion in, this action. As to the forum selection clause's effect, Vision 33 argued that the clause's text required Southeast to bring any claim arising under the Southeast-Vision 33 agreement in California state court. According to Vision 33, Southeast offered no

---

[5] The district court's references to jurisdiction during the proceedings suggest that it may have understood forum selection clauses to implicate subject matter jurisdiction. They do not. Forum selection clauses are properly enforced through motions to transfer venue under 28 U.S.C. § 1404(a) when they point to federal districts and through the doctrine of *forum non conveniens* when they point to state or foreign forums. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59–60 (2013). Those doctrines are distinct from subject matter jurisdiction. *See Sinochem Int'l Co. v. Malay. Int'l. Shipping Corp.*, 549 U.S. 422, 428–36 (2007) (describing *forum non conveniens* and § 1404(a) venue transfer as distinct from jurisdiction).

reason to overturn the signatories' intent, at the time of contracting, to litigate their disputes under the agreement in California state court. Thus, Vision 33 again requested that the court dismiss Southeast's claim against it, this time so that the claim could be refiled in California state court.

After a hearing on the forum selection clause issues, the district court granted Vision 33's motion to dismiss for *forum non conveniens*.[6] The district court implicitly rejected Southeast's waiver argument, concluding that Vision 33's delay in raising the clause posed no bar to its enforcement. The court also concluded that enforcement of the clause demanded the dismissal of Southeast's claim against Vision 33 as well as its claims against SAP. This is Southeast's appeal.

## II.    STANDARD OF REVIEW

The district court concluded that Vision 33 had not waived its right to invoke the forum selection clause. Because the facts surrounding the purported waiver are undisputed, this was a legal conclusion that we review *de novo*. *See Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 & n.18 (11th Cir. 2002).[7] Given our

---

[6] After ruling from the bench, the district court issued a written order granting Vision 33's motion to dismiss for *forum non conveniens*. In its written order, the district court relied on the same reasons it had provided in its oral ruling.

[7] Vision 33 argues that we should review the district court's conclusion for an abuse of discretion. In support of this argument, Vision 33 observes that, in an unpublished opinion, we reviewed for an abuse of discretion a district court's determination that a defendant timely filed a motion to dismiss for *forum non conveniens*. *See Lopez v. Rica Foods, Inc.*, 333 F. App'x 462,

resolution of this case on the waiver issue, we do not consider the appropriate standard of review for the district court's determination that the forum selection clause required dismissal of Southeast's claims against both Vision 33 and SAP.

## III.    ANALYSIS

The dispositive issue in this case is whether the district court erred in concluding that Vision 33 did not waive its right to enforce the forum selection clause.  Southeast and Vision 33 agree on the legal standard that applies to the question of when a litigant waives its right to enforce a forum selection clause by participating in the litigation.[8]  They disagree, however, on whether that standard forbids enforcement of the forum selection clause in this case.  Applying the standard Southeast and Vision 33 agree upon, we conclude that Vision 33 waived its right to invoke the forum selection clause.[9]

## A.    The Forum Selection Clause Waiver Standard

According to Southeast and Vision 33, when assessing whether a party has waived its right to invoke a forum selection clause, we should apply the same waiver standard that we use in the arbitration clause context.  In the arbitration

---

465 (11th Cir. 2009) (unpublished).  *Lopez*, which is not binding on us, did not address whether a litigant's conduct waived its right to invoke a forum selection clause; we therefore do not find it instructive.

[8] SAP expressed no position on the question.

[9] As noted above, it was the district court that first raised the forum selection clause in this case.  Because no party has argued that this fact affects our waiver analysis, we do not consider it.

context, whether a party has waived its right to invoke the clause turns on

(1) whether the party seeking arbitration "substantially participate[d] in [the]

litigation to a point inconsistent with an intent to arbitrate" and (2) whether that

participation "prejudice[d]" the opposing party. *Burch v. P.J. Cheese, Inc.*, 861

F.3d 1338, 1350 (11th Cir. 2017) (first alteration in original) (internal quotation

marks omitted). Given Southeast and Vision 33's consensus on this standard, and

our recognition that "[a]rbitration clauses are similar to forum-selection clauses,"

we apply it here. *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th

Cir. 2012); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An

agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of

forum-selection clause . . . ."). Therefore, we ask (1) whether Vision 33

substantially participated in the litigation to a point inconsistent with an intent to

enforce the forum selection clause, and (2) whether that participation prejudiced

Southeast.[10]

---

[10] In applying this standard, we do not decide for the Circuit the appropriate legal standard to apply when a party has arguably waived its right to invoke a forum selection clause. We apply the standard delineated above in this case because the parties have agreed that its application is appropriate, have not offered us adversarial argument on the issue, and have, therefore, waived any argument that a different standard should be applied. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). We recognize also that there is a general presumption favoring arbitration, derived from the Federal Arbitration Act, that comes into play in the arbitration clause waiver analysis, *see Burch*, 861 F.3d at 1351 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and that presumption does not apply in the forum selection clause context. But this asymmetry does not dissuade us from applying arbitration's waiver framework to the forum selection clause waiver analysis in this case. To be sure, given the asymmetry, there is a theoretical risk that, by importing arbitration's

**B.      Application of the Forum Selection Clause Waiver Standard**

Applying this standard, Vision 33 argues that it neither substantially participated in the litigation to a point inconsistent with an intent to invoke the forum selection clause nor prejudiced Southeast by its conduct.  We reject both arguments, concluding that Vision 33 waived its right to invoke the clause.[11]

**1.      Vision 33's Conduct Was Inconsistent with an Intent to Invoke the Forum Selection Clause.**

Regarding whether its conduct in the litigation was inconsistent with an intent to raise the forum selection clause, Vision 33 has offered two alternative tests for evaluating this question.  First, in its brief, Vision 33 suggested that we adopt a bright-line test, one it argued was not satisfied here, to determine whether a party's conduct suffices for waiver.  Second, at oral argument, Vision 33 contended that we should adopt a holistic approach and, under that approach,

---

waiver framework to the forum selection clause analysis, we impose too heavy a burden on the party arguing that a waiver has occurred.  But that risk is of no moment in this case.  For even if we have imposed too heavy a burden on Southeast, the party arguing waiver, the burden has been carried.

[11] Vision 33 invites us to apply the waiver analysis with an eye toward *Atlantic Marine*'s instruction that motions to dismiss based on forum selection clauses must be granted absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 571 U.S. at 62.  We decline because we are unpersuaded that *Atlantic Marine* speaks to the waiver issue presented here.  In *Atlantic Marine*, the Supreme Court held that the venue transfer motion test is altered when such a motion is premised on a forum selection clause because the parties agreed to litigate in the forum designated by the clause and the "interest of justice" is generally furthered by respecting the parties' agreement. *Id.* at 62–63 (internal quotation marks omitted).  In other words, the Court clarified the effect of a valid forum selection clause on the "usual" venue transfer or *forum non conveniens* analysis. *Id.* at 63.  It did not confront, and its reasoning does not extend to, the issue of when a party waives its right to invoke a forum selection clause.

11

conclude that its conduct was insufficient for waiver.  We reject Vision 33's bright line rule and agree with its alternative test, that a holistic inquiry is necessary to determine whether a party's conduct amounts to waiver.  We disagree with Vision 33, though, on the test's outcome.

Vision 33's bright line test would require us to conclude that a party waives its right to invoke a forum selection clause only if that party "either sued [its adversary] in a forum other than the [one] agreed-upon" or "filed a dispositive motion on the merits after lengthy and substantial litigation."  Vision 33's Br. at 11–12.  Because neither of those conditions was satisfied, Vision 33 contends, its conduct did not constitute waiver.  The first condition was not satisfied because Southeast—not Vision 33—initiated this action in the forum other than the one specified by the forum selection clause.  The second condition was not satisfied, according to Vision 33, because its motion to dismiss was neither "aimed at the merits" nor a "request for final, dispositive relief."  *Id.* at 14.  Vision 33 characterizes this motion as having argued that Southeast's complaint was insufficiently specific because the complaint failed to "cite any specific provision of the [Southeast-Vision 33 agreement] that Vision 33 breached."  Doc. 14 at 6.

We reject Vision 33's bright line rule.  Such a rule would increase the cost of litigation and waste judicial resources by permitting a defendant to raise a forum selection clause years into the litigation, even after documents have traded hands

12

and depositions have been taken, so long as the defendant had not yet filed a motion to dismiss with prejudice or a motion for summary judgment.

The better standard for assessing whether a party's conduct amounted to waiver is the one to which Vision 33 retreated at oral argument: totality of the circumstances. We agree because litigation is too varied to set a bright line rule that determines precisely when a party's conduct constitutes waiver. *See Ivax*, 286 F.3d at 1315–16 (explaining that, in the arbitration clause context, we consider the totality of the circumstances when assessing whether a party's conduct amounted to waiver).

Applying this holistic inquiry here, we conclude that Vision 33's conduct in the litigation was inconsistent with an intent to invoke the forum selection clause. We base our conclusion on three considerations: (1) Vision 33's filing of a motion to dismiss that requested the district court to dismiss Southeast's claim against Vision 33, (2) Vision 33's specific invocation, in the motion to dismiss, of the choice of law clause, which appeared beside the forum selection clause in the agreement, and (3) the fact that Vision 33 propounded discovery requests on Southeast.

More than four months before invoking the forum selection clause, Vision 33 moved to dismiss Southeast's claim against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Vision 33 reiterated its position, that

Southeast's claim against it should be "dismiss[ed]," when it replied to Southeast's response to that motion to dismiss.  Doc. 31 at 4.  On appeal, Vision 33 contends that its motion to dismiss for failure to state a claim was neither "aimed at the merits" nor a "request for final, dispositive relief."  Vision 33's Br. at 14.  That is incorrect.  It is well established that a "dismissal for failure to state a claim under [Rule 12(b)(6)] is a 'judgment on the merits.'" *Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).  And such a dismissal is presumptively with prejudice.  Fed. R. Civ. P. 41(b) (providing that unless a dismissal order "states otherwise" or is based on a "lack of jurisdiction, improper venue, or failure to join a party under [Rule 19]" it "operates as an adjudication on the merits"); *see also Hall v. Tower Land & Inv. Co.*, 512 F.2d 481, 482–83 (5th Cir. 1975) (holding that the district court's dismissal of plaintiff's complaint for failure to state a claim was an adjudication "on the merits" where the district court did not indicate whether that dismissal was "with [or without] prejudice.").[12]  At no point did Vision 33 suggest to the district court that it sought anything other than a dismissal of Southeast's complaint with prejudice.  We therefore conclude that Vision 33's

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

14

motion to dismiss for failure to state a claim evinced waiver because it requested the district court to render a final judgment on the merits.[13]

We need not consider, though, whether Vision 33's *act* of filing a motion to dismiss under 12(b)(6) would, standing alone, suffice for waiver; the *content* of Vision 33's motion leaves little doubt that Vision 33 failed the waiver standard's conduct prong. In its motion to dismiss for failure to state a claim, Vision 33 asked the district court to enforce the choice of law clause in the Southeast-Vision 33 agreement. In that agreement, the choice of law clause and the forum selection clause form a single sentence.[14] It seems to us that Vision 33's decision to file a motion to dismiss on the merits asking the district court to enforce the choice of law clause but not the forum selection clause falls in the heartland of conduct inconsistent with an intent to enforce the latter clause. To hold otherwise would encourage parties to holster their forum selection clause arguments until they suspect they could achieve a better result in another forum.

---

[13] For the proposition that a motion to dismiss is not "aimed at the merits" and is not a "request for final, dispositive relief," Vision 33 relies exclusively on *Hampton v. Equity Trust Co.*, 736 F. App'x 430 (5th Cir. 2018) (unpublished), a case in which the Fifth Circuit had no occasion to consider the effect of a motion to dismiss on a forum selection clause waiver analysis. *Id.* at 431–34, 436. Even if *Hampton* were on point, Vision 33's reading of it runs counter to our own binding precedent.

[14] The provision, entitled "Governance," reads: "This agreement shall be governed by and construed in accordance with the laws applicable in the state of California and shall be subjected to the exclusive jurisdiction of the courts of the state of California." Doc. 1-1 at 20.

Finally, the fact that Vision 33 propounded discovery requests on Southeast points to the conclusion that Vision 33 failed the waiver standard's conduct prong. Roughly two months before the forum selection clause was first raised, Vision 33 served Southeast with a request for production of documents and a set of interrogatories. Although this fact alone would not be dispositive, when we view it alongside Vision 33's filing of a motion to dismiss on the merits—in which it invoked the choice of law, but not the forum selection, clause—we are persuaded that Vision 33 participated in the litigation to an extent that was inconsistent with an intent to invoke the forum selection clause.

Next, we assess whether Southeast suffered prejudice because of that participation.

## 2.     Vision 33's Conduct in the Litigation Prejudiced Southeast.

According to the standard agreed upon by the parties, we turn next to whether Vision 33's conduct, which we have deemed inconsistent with an intent to invoke the forum selection clause, "in some way prejudiced" Southeast. *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). Prejudice may arise when one party incurs unnecessary expense because of the inconsistent actions taken by the party seeking to invoke the clause, *see id.*, or when a tardy invocation of the clause delays resolution of the dispute, *see In re*

16

*Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1295–96 (11th Cir. 2014).[15]

These consequences are likely to occur when a party stows a forum selection

clause argument, litigates merits issues, and then invokes the forum selection

clause. *Id.* at 1296 (explaining that, in the arbitration context, extra "trips" around

the pre-trial motion "carousel" are likely to impose unnecessary litigation costs on

opponents). Vision 33's delayed invocation of the forum selection clause imposed

such costs and prolonged resolution of the dispute. We therefore conclude that

Southeast was sufficiently prejudiced by Vision 33's participation in the litigation

and therefore that Vision 33 waived its right to invoke the clause.

To review, in January 2019, after SAP removed the action to federal court,

both SAP and Vision 33 moved to dismiss for failure to state a claim. Neither

mentioned the forum selection clause. Southeast authored responses to both

motions. The district court established that the trial would occur in Miami and

---

[15] Both *S & H Contractors* and *In re Checking Acct. Overdraft Litig.* arose in the arbitration context. In the arbitration context, when a party's belated invocation of an arbitration clause delays resolution of the litigation, it is troubling, at least in part, because "[a] prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *In re Checking Acct. Overdraft Litig.*, 754 F.3d at 1295 (internal quotation marks omitted). We have no doubt that delayed resolution of the dispute is an appropriate measure of prejudice in the forum selection clause context, too. Just as arbitration clauses are intended to streamline dispute resolution, forum selection clauses are intended to eliminate uncertainty regarding where the dispute resolution will occur and thereby ease the dispute resolution process. *See M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 13–14 & 14 n.15 (1972). When a party litigates substantially in a forum other than the one specified by a forum selection clause, then asserts that the litigation should occur elsewhere, that party arrests the resolution of other issues, creates uncertainty as to the appropriate forum for the action, and delays resolution of the dispute—consequences antithetical to the purpose of forum selection clauses.

referred the case to mediation. Following the court's mediation order, Southeast secured a Miami-based mediator to conduct the mediation in Miami, with Vision 33's and SAP's consent. Southeast made its initial disclosures to Vision 33 and SAP, and Vision 33 propounded discovery requests on Southeast.

Thus, by failing to timely raise the forum selection clause, Vision 33 caused Southeast to expend resources needlessly by forcing it to respond to substantive motions in the Southern District of Florida, begin discovery, and schedule the mediation. And Vision 33's tardy invocation of the clause delayed resolution of the dispute because, if the forum selection clause had been invoked promptly, the case would not have lingered unnecessarily in Florida for nearly five months, until the district court raised the clause in June.

Vision 33 offers two arguments why its delayed invocation of the clause did not prejudice Southeast. First, Vision 33 posits, its tardy invocation of the clause did not delay resolution of the litigation because, if this case were dismissed and refiled in California, Southeast would be in the "same position" it was in when the district court dismissed Southeast's claim against Vision 33. Vision 33's Br. at 19 (emphasis omitted). According to Vision 33, because the litigation would pick up in California where it left off in Florida, the time Southeast spent litigating the case in Florida was not wasted and therefore the dispute's resolution was not delayed.

18

Second, Vision 33 maintains that its tardy invocation of the clause did not cause Southeast to expend resources needlessly because any duplication of discovery efforts that Southeast would have to perform in California "[p]resumably . . . [will] not cost much." *Id.* at 18.  Vision 33 argues that it will be inexpensive for Southeast to "serv[e] the same form objections to discovery requests" in California that it has already served in Florida and that, "[e]ven if Southeast did spend money gathering relevant documents to eventually produce in [this case], th[o]se documents [will] need to be produced in California anyway." *Id.* at 18–19.

We are persuaded by neither argument.  First, we disagree with Vision 33 that, if Southeast were to file a complaint in California, Southeast would be in the same position it was in when the district court dismissed Southeast's claim against Vision 33.  There is no telling how this action actually would take shape in California, but it seems far-fetched to think that the parties could pack up the action, transport it to California, and simply continue discovery without delay. After Southeast initiated the new suit, Vision 33 would presumably enjoy a fresh opportunity to raise legal defenses to Southeast's claim before discovery, giving Vision 33 a second bite at the apple.  Because enforcement of the forum selection clause would not have the effect of simply pausing the Florida litigation so that the case could resume in California, but rather ending the Florida litigation so that a

19

new action could begin in California, Vision 33's tardy invocation of the clause caused unnecessary litigation in Florida and delayed the dispute's resolution.

Second, we reject Vision 33's suggestion that its delayed invocation of the clause did not prejudice Southeast because Southeast has expended only minimal resources preparing for discovery in Florida, and the same preparation would be necessary in the imagined California action. To be sure, the unnecessary expense Southeast suffered due to Vision 33's participation in the Florida litigation was not exorbitant. But we doubt Vision 33's assertion that the documents and information Southeast has expended resources gathering would necessarily be the same documents and information Southeast would need to produce in California. By the time the imagined California action reached discovery, questions litigated in this action may be irrelevant, new questions may have arisen, and, assuming the action was in California state court (the forum designated by the clause), the California Code of Civil Procedure rather than the Federal Rules of Civil Procedure would apply. All or any of these differences may affect the documents and information to be exchanged.[16] By delaying resolution of the dispute and causing Southeast to

---

[16] We note further that Southeast's wasted resources were not necessarily limited to discovery. Because the clause was not raised earlier, Southeast had to file two substantive responses to motions that, depending on the defenses raised in a new California action, may not be filed or may not be the same the second time around.

expend resources unnecessarily, Vision 33's tardy invocation of the clause prejudiced Southeast.

## IV. CONCLUSION

For these reasons, we reverse the grant of Vision 33's motion to dismiss for *forum non conveniens*.  This case is remanded to the district court for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**